# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DYLAN WASKO individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| | **CLASS ACTION COMPLAINT** |
| RUST-OLEUM CORPORATION, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Dylan Wasko ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint ("Complaint") against Defendant Rust-Oleum Corporation ("Defendant" or "Rust-Oleum"), and respectfully alleges as follows:

## <u>NATURE OF THE ACTION</u>

1. Defendant Rust-Oleum Corporation ("Rust-Oleum" or "Defendant") manufactures and sells a variety of do-it-yourself painting products, and aggressively markets them as remarkably superior, thereby meriting their price premiums. One such product is Defendant's "Painter's Touch Ultra Cover 2X Spray Paint" (the "Product"). According to Rust-Oleum, each and every color and finish of Painter's Touch Ultra Cover 2X Spray Paint was designed with "double cover technology" to provide "twice the coverage in a single pass," so that "your project will be done in half the time at half the cost of competitive brands." Customers, who are led to believe that the product is superior to its competitors in quality and cost-efficiency, are thus willing to, and do, pay a higher price.

2.     This class action seeks to redress Defendant's past and present deceptive representations regarding their Painter's Touch Ultra Cover 2X Spray Paint.  Defendant's advertisements, including the Product's name, label, packaging, website, and brochures are false, misleading, and likely to deceive the reasonable consumer.  Rather than providing "twice the coverage" as its competitors, the Product performs below its express representations and fails to fulfill Rust-Oleum's affirmative promises.  As a result, Plaintiff and putative class members ("Class Members" or the "Class") not only paid and continue to pay more than they would otherwise for comparable products that are not falsely advertised, but also have and continue to expend extra time and money to purchase additional spray paint to compensate for the Product's coverage deficiencies.

3.     While it is undeniable that the Product has been a marketing sensation and an unmitigated financial success, Defendant's success has been the result of unlawful and unfair business practices in the marketing and sale of the Product.  These practices are plainly improper and unacceptable -- particularly for a company that prides itself as the "home of trusted quality."[1]

4.     Plaintiff brings this action individually and on behalf of all similarly situated consumers for the relief requested and to promote the public interests in the provision of truthful, non-deceptive information to allow consumers to make informed purchasing decisions and to protect Plaintiff, the Class, and the public at large from Defendant's unfair, unethical, deceptive, fraudulent, unconscionable, and unlawful business practices.

5.     Plaintiff, individually and on behalf of all similarly situated consumers, seeks to compel Defendant to immediately discontinue its unlawful conduct and to provide compensation to all of those affected as a result of Defendant's blatantly deceptive practices.  As alleged in detail, Defendant's conduct constitutes breach of express warranty (CAL. COM. CODE § 2313)

---

[1] *Our History*, RUST-OLEUM, http://www.rustoleum.com/about-rust-oleum/our-history (last visited Jan. 24, 2017).

and unjust enrichment, and violates California's False Advertising Law (CAL. BUS. & PROF. CODE § 17500 *et seq*.), California's Legal Remedies Act (CAL. CIV. CODE § 1750 *et seq*.), and California's Unfair Competition Law (CAL. BUS. & PROF. CODE § 17200 *et seq*.).

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Plaintiff's claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) at least one Class Member is a citizen of a state that is diverse from Defendant's citizenship; and (3) the aggregate amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

7.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal headquarters in Vernon Hills, Illinois; has sufficient minimum contacts with Illinois; or otherwise intentionally avails itself of the markets within Illinois through the promotion, sale, marketing, and distribution of its products such that the exercise of jurisdiction by this Court is proper and necessary.  Moreover, Rust-Oleum's wrongful conduct emanates from its corporate headquarters in Illinois.

8.     Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in Illinois; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## PARTIES

9.     Plaintiff Dylan Wasko is a citizen and resident of Sacramento, California. Plaintiff Wasko purchased the Product at several locations during the class period, including at Home Depots located at 2000 Howe Avenue in Sacramento, California and at 6001 Madison Avenue in Carmichael, California, as well as Wal-Mart stores located at 3460 El Camino Avenue

in Sacramento, California and at 4675 Watt Avenue in North Highlands, California. Plaintiff made these purchases in reliance on the representations on the Product's name, label, packaging, website, and brochures that the product was "2X double the square foot coverage of other competitive brands," and "Made with Double Cover Technology." Plaintiff Wasko would not have purchased, and/or would not have paid a price premium for, the Product had he known that the Product did not actually provide double coverage.

10.     Defendant Rust-Oleum Corporation is an Illinois corporation, with its corporate headquarters located in Vernon Hills, Illinois. Rust-Oleum is a global manufacturer, distributor, and seller of "premium" paints and coatings products for both home and industry use. Rust-Oleum is a subsidiary of RPM International, Inc. ("RPM"), and has been since the formerly-family-owned company was purchased in 1994. As of 2014, Rust-Oleum's sales had risen nearly ninefold since the company's sale to RPM, generating $1.2 billion in annual sales.[2]

## FACTUAL ALLEGATIONS

**Do-It-Yourself Home Improvement Is A Highly
Profitable Industry With Highly Reliant Customers**

11.     Rust-Oleum manufactures, markets, warrants, and sells paints and coatings for residential and industrial purposes. The company prides itself as the "home of trusted quality . . . since 1921."[3]

12.     U.S. households spent approximately $319 billion on home improvement products in 2015, and are estimated to have increased such spending by 4.7% in 2016.[4]

---

[2] Alejandra Cancino, Rust-*Oleum's perks sparkle among top workplaces*, CHICAGO TRIBUNE (Nov. 14, 2014), http://www.chicagotribune.com/business/ct-twp-medium-rust-oleum-1114-biz-20141114-story.html.

[3] RUST-OLEUM, *supra* note 1.

13.     Do-it-yourself consumers reasonably rely on manufacturers to provide accurate information regarding their products, including representations made on labels.

14.     Product packaging is a significant vehicle through which manufacturers of do-it-yourself products communicate material that they believe, and reasonably expect, to be important to consumers making purchasing decisions.

15.     Rust-Oleum is best known for its do-it-yourself products for the individual consumer home improvement market.  Knowing its consumer base, Rust-Oleum emphasizes the easy application of its products and often features "How to Apply" videos on its website and on YouTube.[5]

**The Marketing Scheme**

16.     Throughout the relevant period, Defendant made numerous misrepresentations to consumers about the Product's purported qualities and use in the Product's name, and on its labels and packaging, including, but not limited to, the following:

a.   The Product's name, wherein "2X" is directly followed or preceded by "Ultra Cover;"

b.   A gold seal with the text "DOUBLE COVER" overlaid;

c.   A very prominent "2X" featured beside the gold seal;

d.   "Made with double cover technology"; and

e.   Photo depiction of "one can = two cans" adjacent to "COVERAGE."

17.     Examples of the Product's labels and packaging appear below:

---

[4] Matthew Craig, *Expecting 4.7% Home Improvement Sales Growth in 2016*, HOME IMPROVEMENT RESEARCH INSTITUTE (Mar. 2, 2016), https://www.hiri.org/news/277907/Expecting-4.7-home-improvement-sales-growth-in-2016.htm.

[5] How-To Videos, RUST-OLEUM, http://www.rustoleum.com/pages/homeowner/how-to-videos/.





18.     Reasonable consumers understand from the Product's labels that the paint provides double coverage and is thus superior to other painting products.

19.     Defendant reinforces this deception.  Defendant's marketing beyond the Product's name, label, and packaging similarly emphasize the Product's purported superiority. Defendant's website, brochure, and additional promotional materials feature similar misrepresentations, including, but not limited to:

a.      "The breakthrough technology of Painter's Touch Ultra Cover 2X means you'll get twice the coverage in a single pass -- which means your project will be done in half the time at half the cost of competitive brands";

b.      A YouTube commercial, which included written phrases such as "be twice as beautiful," "be twice as colorful," and "get twice the coverage"; and

c.      A brochure depicting nearly perfect coverage provided by the Product, juxtaposed with insufficient coverage provided by "Brand K".

20.     An example of the Product's description on Rust-Oleum's website appears below:



21.    All of these statements convey a message that the Product is in fact superior because it provides twice the coverage versus other available brands.

**The Product Does Not Perform As Marketed By Defendant**

22.    Contrary to Defendant's express representations, the Product did not provide the coverage, time efficiency, or cost savings they were marketed.

23.    In early 2016, the National Advertising Division ("NAD"), the investigative unit of the Council of Better Business Bureaus charged with monitoring truthfulness and accuracy in advertising, released its recommendations that Rust-Oleum discontinue its claims that expressly state or suggest that its Painter's Touch Ultra Cover 2X Spray Paint provides twice as much coverage as competing spray paints.  NAD also recommended that Defendant change the name of the Product.[6]  NAD's recommendations arose out of its review of Rust-Oleum's claims as they appeared on product packaging, in broadcast, print, and website advertising, and in a YouTube video.

24.    Upon review of the Product's packaging, labeling, marketing, and advertisements, NAD concluded that Rust-Oleum reasonably conveyed to consumers that the Product provides double the coverage of competing brands, including its competitor Krylon.  NAD further determined that the product name constitutes an express performance claim because "2X" is followed directly by the claim "Cover."

25.    NAD then conducted an assessment of Rust-Oleum's product testing to determine the legitimacy of its claims.

---

[6] NATIONAL ADVERTISING DIVISION, NAD RECOMMENDS RUST-OLEUM DISCONTINUE '2X' COVERAGE CLAIMS FOR 'PAINTER'S TOUCH ULTRA COVER 2X SPRAY PAINT,' CHANGE PRODUCT NAME; COMPANY TO APPEAL (2006).

26. NAD refuted the relevancy of Rust-Oleum's in-house testing in 2008 and its independent testing in 2009 because the products used were no longer available in the marketplace.

27. NAD instead examined on Rust-Oleum's in-house comparative testing conducted in 2014 and 2015 on Krylon CoverMaxx and ColorMaster spray paints, respectively.

28. NAD concluded that none of the testing Defendant conducted supported the double coverage claim. Primarily, Rust-Oleum did not implement sufficient controls to prevent the biases associated with in-house testing -- as opposed to independent testing. One possible method of reducing biases is conducting blind or double-blind studies. Second, NAD found that it was unclear whether Krylon's use instructions were properly followed. Krylon's instructions state that the spray should be applied from six to eight inches away from the surface. If sprayed at a further distance, the coverage would dissipate. Third, NAD cautioned that any inherent or potential bias or deviation from the Product's application instructions, e.g., spraying the Product from a closer distance than instructed, could materially impact the test results.

29. NAD determined that, because of the impactful 2X claims and imagery on each and every color and finish of the Product, consumers will reasonably expect that the double coverage claims are consistently true, not simply that there is a possibility that the Product may provide twice the coverage, as the studies found.

30. With respect to Rust-Oleum's claim that "2X's formulation contains more solids and premium pigments," NAD determined that Rust-Oleum failed to provide any evidence as to the amount of pigments and solids in the Product, and as a result, NAD could not verify the claim.

31.     Despite the lack of meaningful testing, statistical analysis, and accuracy, Rust-Oleum chose to market the Product with a prominent, specific, quantified, express performance claim.

32.     As a consequence of its investigation, NAD recommended that Rust-Oleum discontinue its marketing grounded in its unsubstantiated performance claims, namely the 2X coverage claims, imagery, and name.  NAD further recommended that the visuals depicting the Product's flawless coverage next to Krylon's insufficient coverage, as well as claims that the Product's formulation contains more solids and pigments, be discontinued.

33.     Rust-Oleum subsequently appealed NAD's recommendation that it discontinue its use of "2X" as a part of the Product's name.  The National Advertising Review Board ("NARB") agreed with NAD, determining that the product name was, in fact, an express performance claim that the Product delivers twice the coverage of competing brands.  The panel agreed that both the Product's original name – Painter's Touch Ultra Cover 2X -- and current name -- Painter's Touch 2x Ultra Cover -- reasonably conveyed that the Product provides double coverage.

34.     Despite these findings, Defendant continues to label, market, and advertise its Product as providing double coverage.

35.     Therefore, Defendant knows that these representations are false, and its labeling and marketing representations are deceptive and misleading to reasonable consumers.

36.     Accordingly, Defendant has engaged in a widespread marketing campaign to mislead consumers about the nature and quality of the Product during the applicable statute of limitations period (the "Class Period") in violation of the Oregon, Wisconsin, and California consumer protection statutes, and the common law.

# CLASS ACTION ALLEGATIONS

37.     Pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of a class of individuals in California, defined as follows:

> All persons in the State of California who purchased the Product for their personal use and not for resale during the Class Period.

38.     Excluded from the above Class are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors.  Also excluded are the Judges to whom this case is assigned and any member of the Judge's immediate family.

39.     The Class is so numerous that joinder of all members is impracticable.

40.     The rights of Plaintiff, and each Class Member, were violated in precisely the same manner by Defendant's misleading and deceptive labeling, marketing, and advertising.

41.     There are numerous questions of law and fact common to Plaintiff and Class Members.  These common questions of law and fact include, but are not limited to, the following:

a.     whether Defendant's labeling, advertising or marketing of the Products is false and misleading;

b.     whether Defendant marketed the Product as a superior product;

c.     whether a reasonable consumer would understand and believe from Defendant's deceptive representations that the Product always provides twice as much coverage as its competitors' spray paints;

d.     whether a reasonable consumer would understand and believe from Defendant's deceptive representations that the Product provides twice as much coverage in half the time at half the cost of competitive brands;

e.     whether Defendant's Product commands a premium price caused by these deceptions;

f.     whether Defendant's misrepresentations were material to reasonable consumers;

g.     whether Defendant's labeling, marketing, and sale of the Product constitutes deceptive conduct;

h.     whether Defendant's conduct described above constitutes negligent misrepresentation;

i.     whether Defendant's conduct described above constitutes breach of express warranty;

j.     whether Defendant was unjustly enriched due to its iniquitous conduct;

k.     whether Defendant's conduct injured consumers and, if so, the extent of the injury;

l.     the appropriate remedies for Defendant's conduct; and

m.     whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and Class Members are entitled to restitution and injunctive relief.

42.     Plaintiff's claims are typical of the claims of the Class. Plaintiff suffered the same injury as Class Members -- i.e., Plaintiff purchased the Product after seeing Defendant's misleading representations about the quality, benefits, characteristics, and nature of the Product and paid more money than they otherwise would have for the actual Product they received.

43.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel has interests that are contrary to or that conflict with those of the Class.

44.     Defendant has engaged in a common course of conduct toward Plaintiff and Class Members.  The common issues arising from this conduct that affect Plaintiff and Class Members predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

45.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class Members number in the thousands, and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class Members to prosecute their claims individually. Trial of Plaintiff and the Class Members' claims is manageable. Unless the Class is certified, Defendant will remain free to continue to engage in the wrongful conduct alleged herein without consequence.

46.     Certification of the Class, therefore, is appropriate under FED. R. CIV. P. 23(b)(3), because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47. Certification of the Class also is appropriate under FED. R. CIV. P. 23(b)(2), because Defendant has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or equitable relief with respect to the Class as a whole.

48. Certification of the Class also is appropriate under FED. R. CIV. P. 23(b)(1), because the prosecution of separate actions by individual Class Members would create a risk of establishing incompatible standards of conduct for Defendant.

49. Defendant's wrongful actions, inaction, and omissions are generally applicable to the Class as a whole and, therefore, Plaintiff also seeks equitable remedies for the Class.

50. Defendant's systemic policies and practices also make injunctive relief for the Class appropriate.

51. Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law and infliction of economic damages, injury, and harm on Plaintiff and the Class Members.

## FIRST CAUSE OF ACTION
### Breach of Express Warranty

52. Plaintiff Wasko re-alleges and incorporates by reference all preceding factual allegations.

53. Plaintiff Wasko brings this claim individually and on behalf of members of the Class.

54. Plaintiff and Class Members formed a contract with Defendant at the time each individual purchased the Product. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging for the Product and through marketing and advertising, as described above.

55.    These representations, marketing and advertising became part of the basis of the bargain between Plaintiff and Defendant, and between Class Members and Defendant.

56.    Defendant made several express warranties and representations constituting warranties regarding the Product, including, but not limited to, to following warranties:

a.    "Ultra Cover 2X" or "2X Ultra Cover," appearing as a part of the name;

b.    A gold seal with the text "DOUBLE COVER" (label);

c.    That the Product was "Made with Double Cover Technology" (label and online);

d.    "The breakthrough technology of Painter's Touch Ultra Cover 2x means that you'll get twice the coverage in a single pass -- which means your project will be done in half the time at half the cost of competitive brands." (online);

e.    A photo of the Product and two other paint cans to illustrate the claim that the coverage provided by one can of Defendant's Product is equivalent to two cans of competitors' products (label);

f.    A YouTube commercial included the onscreen phrases "be twice as beautiful," be twice as colorful," and "get twice the coverage" (online);

g.    A depiction of the nearly flawless coverage provided by one or two passes of the Product, compared to insufficient coverage provided by "Brand K" after one or two passes (brochure).

57.    Defendant made the above-described representations to induce Plaintiff and Class Members to purchase the Product, and Plaintiff and Class Members relied on the representations in purchasing the Product.

58. The representations, promises, descriptions, and models became part of the basis of the bargain between the parties and created a collective "express warranty" that the Product would conform to Defendant's affirmative representations, promises, descriptions, and models.

59. All conditions precedent to Defendant's liability has been performed by Plaintiff and Class Members, who paid the asking price for the Product in question.

60. Defendant breached the express warranty by providing the Product in a condition that did not confirm to the affirmations, promises, descriptions, or models.

61. Defendant's breach resulted in damages to Plaintiff and Class Members, who brought the Product but did not receive the goods as expressly warranted.

62. Defendant's conduct described in this complaint constitutes a breach of express warranty under UCC § 2-313, as adopted by state statute in California. CAL. COM. CODE § 2313.

63. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members suffered damages, injury in fact, and/or ascertainable loss in the amount of the purchase price they paid for the Product, and the time and cost expended to compensate for the Product's deficiencies. Furthermore, Plaintiff and Class Members were deprived of the benefit of their bargain and spent money on the Product that did not have any value or had less value than warranted. Alternatively, Plaintiff and Class Members would not have purchased the Product had they known the true facts about it.

64. THEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

65. Plaintiff Wasko re-alleges and incorporates by reference all preceding factual allegations.

66. Plaintiff Wasko brings this claim individually and on behalf of members of the Class.

67. Plaintiff Wasko and members of the Class conferred a benefit on Defendant by purchasing the Product.

68. As set forth above, Defendant engaged in deceptive conduct because of its wrongful acts and omissions regarding the nature and quality of its Product through the Product's marketing, labeling, and advertising.

69. Defendant charged a higher price for the Product than the Product's true value and Defendant obtained monies that rightfully belong to Plaintiff Wasko and Class Members.

70. As a result of Defendant's deceptive, fraudulent, and misleading labeling, marketing, and advertising and sales of their Products, Defendant was enriched at the expense of Plaintiff Wasko and members of the Class, through the payment of the purchase price for Defendant's Product.

71. Defendant enjoyed the benefit of increased financial gains to the detriment of Plaintiff and Class Members.

72. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from Plaintiff Wasko and members of the Class in light of the fact that the Product purchased by Plaintiff Wasko and the Class Members was not what Defendant purported it to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff Wasko and Class Members for the monies paid to Defendant for the Products.

73. THEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION
### Violation of the California False Advertising Law
### (CAL. BUS. & PROF. CODE § 17500)

74.     Plaintiff Wasko incorporates by reference each preceding paragraph as though fully set forth herein.

75.     Plaintiff Wasko brings this Count on behalf of himself and the Class against Defendant.

76.     The California False Advertising Law ("CFAL") proscribes any person, firm, corporation, or employee thereof from disseminating any statements concerning property it intends to sell that are untrue or misleading, and which are known, or which by the exercise of reasonable care should be known, to be untrue or misleading, as a part of a scheme or plan with the intent not to sell that property as so advertised.  CAL. BUS. & PROF. CODE § 17500.

77.     Defendant advertised, marketed, and otherwise disseminated information to the public through advertising mediums, including the Internet, brochures, labeling, packaging, and statements promoting the Product as providing twice the coverage as its competitors, in half the time and at half the cost, and as containing more solids and premium pigments than its competitors.

78.     Defendant knew, or should have known by the exercise of reasonable care, that these claims were false, misleading, and likely to deceive consumers such as Plaintiff Wasko and Class Members.

79.     Defendant also omitted material information regarding the Product's quality, characteristics, benefits, and uses that it was legally obligated to disclose.

80.     Defendant's false statements were part of a scheme or plan to induce Plaintiff Wasko and Class Members to purchase the Product at an unwarranted premium.

81.     Plaintiff Wasko and the Class relied on Defendant's deceptive marketing, labeling, packaging, literature, and statements regarding the quality, characteristics, benefits, and uses of the Product.

82.     Consequently, Defendant's deceptive actions violate the CFAL.

83.     As a direct and proximate result of Defendant's unfair, unethical, deceptive, fraudulent, unconscionable, and/or unlawful tactics, Defendant received ill-gotten gains and/or profits, including but not limited to money from Plaintiff Wasko and Class Members who paid a premium for the Product.  Thus, while Plaintiff Wasko and the Class suffered ascertainable losses and injuries, Defendant was unjustly enriched.

84.     Plaintiff Wasko and Class Members seek restitution and disgorgement of Defendant's ill-gotten gains as provided for by CAL. BUS. & PROF. CODE § 17535.

85.     Plaintiff Wasko and Class Members further seek injunctive relief to compel Defendant to stop advertising the Product as providing twice the coverage as its competitors' products, allowing consumers to paint in half the time and at half the cost, and as containing more solids and premium pigments as its competitor products, and to prevent Defendant from engaging in these wrongful practices in the future.  No other adequate remedy at law exists.  If an injunction is not ordered, the Plaintiff Wasko and Class Members will suffer irreparable harm and/or injury.

**FOURTH CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act**
**(CAL. CIV. CODE § 1750)**

86.     Plaintiff Wasko incorporates by reference each preceding paragraph as though fully set forth herein.

87.    Plaintiff Wasko brings this Count on behalf of himself and the Class against Defendant.

88.    The California Consumers Legal Remedies Act ("CCLRA") was designed "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." CAL. CIV. CODE § 1760.

89.    The Product is a "good" within the meaning of CCLRA, CAL. CIV. CODE § 1761(a).

90.    Defendant, a corporation, qualifies as a "person" within the meaning of CCLRA, CAL. CIV. CODE § 1761(c).

91.    Plaintiff Wasko and Class Members are "consumers" within the meaning of CCLRA, CAL. CIV. CODE § 1761(d).

92.    The purchases of the Product made by Plaintiff Wasko and Class Members constitute "transactions" within the meaning of CCLRA, CAL. CIV. CODE § 1761(e).

93.    Defendant advertises, labels, and markets the Product as being made with "more solids and premium pigments" than its competitors, and "double cover technology such that it provides "twice the coverage in a single pass – which means your project will get done in have the time at half the cost of competitive brands." In its Product literature, Defendant depicts nearly perfect coverage provided by the Product, juxtaposed with insufficient coverage provided by "Brand K," clearly referring to its leading competitor Krylon. Defendant also promotes the Product's purported characteristics, uses, and benefits in a YouTube commercial, which included written phrases such as "be twice as beautiful," "be twice as colorful," and "get twice the coverage."

94.     Nevertheless, Defendant's advertisements, labeling, and marketing methods described above are false and deceptive.  The Product does not in fact provide twice as much coverage as its competitors, nor is there evidence that the Product contains more solids and premiums pigments than its competitors.  Accordingly, the Product fails to meet its purported quantifiably superior standard, and thus does not conform to the affirmations of fact and promises contained in Rust-Oleum's advertising, labeling, and marketing of the Product.

95.     Thus, Defendant has engaged in and continues to engage in unfair and deceptive business practices in violation of the CCLRA in at least the following respects:

a.   Defendant represented that the Product has characteristics, uses, benefits, and qualities that it does not have in violation of § 1770(a)(5);

b.   Defendant represented that the Product are of a particular standard, quality, or grade when they are of another in violation of § 1770(a)(7);

c.   Defendant disparaged the goods of another by false or misleading representations of fact in violation of § 1770(a)(8);

d.   Defendant advertised the Product with the intent not to sell it as advertised in violation of § 1770(a)(9); and

e.   Defendant represented that the Product was supplied in accordance with previous representations when in fact it was not in violation of § 1770(a)(16).

96.     Plaintiff Wasko and Class Members reasonably relied upon Defendant's unfair and deceptive acts and practices when purchasing the Product and have suffered ascertainable injuries and losses as a result.

97.     Pursuant to § 1782 of the CCLRA, Plaintiff Wasko has provided Defendant with notice of Defendant's CCLRA violations, accompanied by a demand that Defendant correct,

repair, replace, and otherwise rectify the unlawful practices. At this juncture, Plaintiff Wasko only seeks declaratory and injunctive relief under the CCLRA.

**FIFTH CAUSE OF ACTION**
**Violation of the California Unfair Competition Law**
**(CAL. BUS. & PROF. CODE § 17200)**

98.     Plaintiff Wasko incorporates by reference each preceding paragraph as though fully set forth herein.

99.     Plaintiff Wasko brings this Count on behalf of himself and the Class against Defendant for the relief requested, to protect the public from future deception and fraud, and to promote the public interest in the provision of truthful information to allow consumers to make informed purchasing decisions.

100.     Defendant's actions constitute unfair competition within the meaning of the California Unfair Competition Law ("CUCL") insofar as the CUCL prohibits "any unlawful, unfair or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

101.     Defendant's misrepresentations and failure to disclose material facts regarding the Product constitute unlawful, unfair, and fraudulent business practices in that they deceived Plaintiff Wasko and Class Members into believing that the Product would provide twice as much coverage as competitor spray paints, and that the Product contained more solids and premium pigments than competitive products.

102.     Defendant's conduct constitutes an "unlawful" business practice within the meaning of the CUCL because it violates *inter alia* the CCLRA and the CFAL.

103.     Defendant's conduct constitutes an "unfair" business practice within the meaning of the CUCL because it is immoral, unethical, oppressive, unscrupulous, and substantially

injurious to provide consumers with deceptive information. Reasonable consumers purchased the Product believing it contained the characteristics, formula, and quality represented in Defendant's advertising. The consumers, largely uninformed due to the nature of the do-it-yourself market, as explained above, were not aware and could not have reasonably been aware that the Product was falsely marketed and labeled.

104.    Defendant's conduct constitutes a "fraudulent" business practice within the meaning of the CUCL insofar as Defendant's misrepresentations and omissions regarding the characteristics, formula, and quality of the Product were and are likely to deceive members of the public.

105.    As a direct and proximate result of Defendant's unfair, unethical, deceptive, fraudulent, unconscionable, and/or unlawful tactics, Plaintiff Wasko and Class Members have suffered damages, injury in fact, and/or ascertainable loss in the amount of the purchase price they paid for the Product, and the time and cost expended to compensate for the Product's deficiencies. Furthermore, Plaintiff and Class Members were deprived of the benefit of their bargain and spent money on the Product that did not have any value or had less value than warranted. Alternatively, Plaintiff Wasko and Class Members would not have purchased the Product had they known the true facts about it.

106.    Pursuant to § 17203 of the CUCL, Plaintiff Wasko seeks injunctive relief, restitution, and any additional relief the court deems proper.

## PRAYER FOR RELIEF

107.    WHEREFORE, Plaintiff, on his own behalf and on behalf of Class Members, prays for judgment against Defendant as follows:

       a.    Certification of the proposed Class;

b.      Appointment of Plaintiff Wasko as representative of the Class;

c.      Appointment of the undersigned counsel as counsel for the Class;

d.      An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

e.      An order requiring Defendant to notify each and every individual and/or business who purchased the Product of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant;

f.      An order compelling Defendant to engage in a corrective advertising campaign to inform the public concerning the true nature of the Product, including a recall of the falsely and deceptively labeled Product;

g.      An order requiring Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth herein;

h.      An award to Plaintiff and the Class of damages, including interest, as allowed by law;

i.      An award to Plaintiff and the Class of attorneys' fees and costs, as allowed by law and/or equity;

j.      Leave to amend this Complaint to conform to the evidence presented at trial; and

k.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY**

108.    Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated:  March 23, 2017          **GORDON LAW OFFICES, LTD.**

By:    /s/ *Richard R. Gordon*

Richard R. Gordon
rrg@gordonlawchicago.com
211 West Wacker Drive, Suite 500
Chicago, Illinois 60606
Tel: (312) 332-5200
Fax: (312) 236-7727

Todd S. Garber
*tgarber@fbfglaw.com*
D. Greg Blankinship
*gblankinship@fbfglaw.com*
(Pro Hac Vice Applications Forthcoming)
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3283
Fax: (914) 824-1561

*Co-Lead Counsel for Plaintiff
and the Putative Class*

Samuel J. Strauss
(Pro Hac Vice Application Forthcoming)
*sam@turkestrauss.com*
TURKE & STRAUSS LLP
613 Williamson Street, Suite 209
Madison, WI 53705
Tel: (608) 237-1775

*Co-Lead Counsel for Plaintiff*
*and the Putative Class*

## <u>DECLARATION OF DYLAN WASKO</u>

I, DYLAN WASKO, declare as follows:

1.     I make this declaration based upon my personal knowledge except as to those matters stated herein that are based upon information and belief, and as to those matters I believe them to be true. I am over the age of eighteen, a citizen of the State of California, and a Plaintiff in this action.

2.      Pursuant to California Civil Code section 1780(d), this Declaration is submitted in support of Plaintiff's Selection of Venue for the Trial of Plaintiff's Cause of Action alleging violation of California's Consumer Legal Remedies Act.

3.     I reside in Sacramento, California.  I purchased RUST-OLEUM CORPORATION's Painter's Touch Ultra Cover 2X Spray Paint which is the subject of the lawsuit in the United States District Court for the Northern District of Illinois.

4.     I am informed and believe that Defendant RUST-OLEUM CORPORATION is a Illinois corporation, organized and existing under the laws of the State of Illinois and registered to conduct business in Illinois.  Defendant RUST-OLEUM CORPORATION's Corporate Headquarters are located at 11 E Hawthorn Pkwy, Vernon Hills, IL 60061, which is in Lake County, Illinois.

5.     Based on the facts set forth herein, this Court is a proper venue for the Prosecution of Plaintiff's Cause of Action alleging violation of California's Consumer Legal Remedies Act because Defendant's headquarters are located in Lake County, and Defendant Conducts business in Lake County and throughout Illinois and the United States of America.

6.     I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.

DocuSign Envelope ID: 74F98F4E-81F6-4966-8416-DA653AC1C230

Executed on March <u>23</u>, 2017 in Sacramento, California.



Dylan Wasko